1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT

9          CENTRAL DISTRICT OF CALIFORNIA

10

11   ABIRA MEDICAL
     LABORATORIES, LLC d/b/a                    Case No. 2:25-cv-03220-WLH-RAO
12   GENESIS DIAGNOSTICS,
                                                **ORDER RE PLAINTIFF'S MOTION
13              Plaintiff,                       TO REMAND AND DEFENDANT
                                                 ANTHEM'S MOTION TO DISMISS
14   v.                                          [17, 12]**

15   ANTHEM BLUE CROSS LIFE AND
     HEALTH INSURANCE COMPANY,
16   et al.

17              Defendants.

18

19

20        The Court is in receipt of Plaintiff's Motion to Remand (the "MTR") (MTR,

21   Docket No. 17), as well as Defendant Anthem's Motion to Dismiss (the "MTD").

22   (MTD, Docket No. 12). No party filed a written request for oral argument stating that

23   an attorney with five years or less of experience would be arguing the matter. (*See*

24   Standing Order, Docket No. 11 at 16). Further, pursuant to Federal Rule of Civil

25   Procedure 78 and Local Rule 7-15, the Court finds this matter appropriate for decision

26   without oral argument. The hearing calendared for June 13, 2025, is **VACATED**, and

27   the matter is taken off calendar. For the following reasons, the Court **DENIES** the

28   MTR and **GRANTS** the MTD, dismissing the action in its entirety without prejudice.

# I. BACKGROUND

## A. <u>Factual Background</u>

Plaintiff Abira Medical Laboratories, LLC ("Plaintiff" or "Plaintiff Abira") brings the present action against Defendants Anthem Blue Cross Life and Health Insurance Company and Blue Cross of California d/b/a Anthem Blue Cross ("Defendant Anthem")[1] and California Physicians Service d/b/a Blue Shield of California ("Defendant Blue Shield") (collectively, "Defendants").[2]  Defendants are "insurance company[ies]" which are "authorized to do business" and "provide health insurance services throughout California."[3]  (Notice of Removal, Docket No. 1-2, Ex. A-2, First. Am. Compl. ("FAC") ¶¶ 7-9).  Plaintiff is a "New Jersey limited liability company" with its "principal place of business" in Pennsylvania and is "an out-of-network provider of laboratory testing services to Defendants' subscribers / members" (the "Insureds").[4]  (*Id.* ¶ 6).

---

[1] The Court notes that while Anthem Blue Cross Life and Health Insurance Company is a separate entity from Blue Cross of California, the two Defendants have filed their motions as a singular entity, referred to as "Anthem."  (*See* Notice of Removal at 3; MTD at 1).  Accordingly, the Court utilizes this naming convention for the sake of consistency.

[2] Plaintiff also bring this action against ABC Companies 1 through 100 and Does 1 through 100.  For the purpose of these Motions, however, the Court refers only to the named Defendants.

[3] Defendant Anthem, providing URLs to public government websites, requests judicial notice of the fact that Anthem Blue Cross Life and Health Insurance Company is a "health insurance company licensed by the Insurance Commissioner and regulated by the Department of Insurance," and that Blue Cross of California is a "health care service plan regulated by the California Department of Managed Health Care[.]" (Request for Judicial Notice ISO MTD ("RJN"), Docket No. 12-14 ¶¶ 1-2).  A court may take judicial notice of documents available on government websites. *See Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015) ("Under Rule 201, the court can take judicial notice of '[p]ublic records and government documents available from reliable sources on the Internet,' such as websites run by governmental agencies."); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) (taking judicial notice of information on the websites of two school districts because they were government entities).  The Court finds these facts appropriate subjects for judicial notice and **GRANTS** the Request.

[4] For the sake of consistency and simplicity, the Court will refer to those individuals who are insureds, members and/or subscribers of Defendants and received the

2

1  Plaintiff alleges generally that "Defendants refused to pay Plaintiff for
2  laboratory testing services [(the "Laboratory Testing Services")] rendered to multiple
3  [Insureds] insured by Defendants." (Notice of Removal, Docket No. 1-2, Ex. A-2,
4  First. Am. Compl. ("FAC") ¶ 1). Plaintiff contends that Defendants "deprived
5  Plaintiff of millions of dollars to which it was rightfully entitled to receive[,]" by
6  providing "purported bases for denial of coverage [which] were entirely
7  groundless . . ." (*Id.* ¶ 4). More specifically, Plaintiff alleges that it "performed
8  clinical laboratory, pharmacy, genetics, addiction rehabilitation, and COVID-19
9  testing services on specimens submitted by medical service providers, on behalf of
10 Defendants' subscribers / members, for numerous patients located throughout the
11 United States[.]" (FAC ¶ 14). Plaintiff contends that Defendants have "contractual
12 obligations . . . to pay for the Laboratory Testing Services that were provided by
13 Plaintiff to Defendants' [Insureds]." (*Id.* ¶ 15). This is because Defendants' Insureds
14 allegedly "assign[ed] all rights and benefits under [their] health plan[s] and direct[ed]
15 payments to be made to [Plaintiff] for laboratory services furnished to [them] by
16 [Plaintiff]." (*Id.* ¶ 16). As a result, with respect to these Insureds who had assigned
17 such rights and benefits and had received the Laboratory Testing Services,
18 "contractual obligations arose between the Plaintiff and Defendants . . ." (*Id.* ¶ 18).

19 Plaintiff contends that "Defendants – over an extended period of time –
20 blatantly disregarded, among other of their duties, express obligations to pay Plaintiff
21 for services rendered." (*Id.*). To that end, Defendants allegedly "either failed to
22 respond at all to properly submitted claims or fabricated some other pretextual basis to
23 improperly refuse to make payment to Plaintiff." (*Id.* ¶ 19). Some of the purportedly
24 "meritless reasons for refusing and neglecting to properly process a myriad of
25 Plaintiff's claims for payment[,]" include "(i) lack of adequate claim information
26 provided by Plaintiff; (ii) untimely filing of claims; and (iii) lack of coverage by the
27
28 laboratory testing services at issue (the "Laboratory Testing Services") as "Insureds."

3

[Insureds] for the services provided." (*Id.* ¶ 20). Plaintiff attached as Exhibit 1 to the FAC "a spreadsheet [(the "Redacted Claims Spreadsheet")] setting forth the [Insureds] who were rendered the Laboratory Testing Services, the dates of service, the amounts billed for those services, and their respective ascension numbers." (*Id.* ¶ 17; *see also Id.* at Ex. 1). That spreadsheet contains 1,326 claims alleged to be in dispute (the "Disputed Claims"). (*Id.* at Ex. 1). Plaintiff "redacted the names" of the Insureds "to ensure" compliance with the Health Portability and Accountability Act of 1996 (HIPAA)." (*Id.* ¶ 17 n.1). On or about March 13, 2025, Plaintiff provided a spreadsheet containing all the same information, but with the Insureds' names unredacted (the "Unredacted Claims Spreadsheet"), along with a handful of claim numbers. (Decl. of Jessamyn Vedro ISO Notice of Removal ("Vedro Decl. ISO Removal"), Docket No. 1-3 ¶ 3).

Plaintiff brings claims for (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; and (3) quantum meruit / unjust enrichment.[5] (*See generally Id.*). Plaintiff seeks: (1) "compensatory, direct, or actual damages in the amount of not less than $4,373,182;" (2) "all legal, equitable, consequential, and/or incidental damages as determined by the trier of fact;" (3) punitive and/or exemplary

---

[5] The Court notes that, while the cover page of the FAC indicates that there is a fourth cause of action for fraudulent and negligent misrepresentation / promissory and equitable estoppel, there is no reference to this cause of action within the FAC. (*See generally Id.*). Furthermore, in Plaintiff's MTR, it explicitly notes the FAC "contain[s] three counts[.]" (MTR at 2). Similarly, in Plaintiff's Opposition to the MTD, it also describes its FAC as only "containing three counts[.]" (Opp'n to MTD, Docket No. 21 at 3) (listing the three counts in the FAC as (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing, and (3) quantum meruit / unjust enrichment). The Court, therefore, finds that Plaintiff has abandoned the claim for fraudulent and negligent misrepresentation / promissory and equitable estoppel. *See, e.g., Walsh v. Nevada Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (finding that a plaintiff who raises a claim in a complaint, but does not address it in response to a defendant's motion to dismiss, "has effectively abandoned" that claim); *see also Toranto v. Jaffurs*, 297 F.Supp.3d 1073, 1104 (S.D. Cal. 2018) (finding the plaintiff's claim "abandon[ed]" where not addressed in his opposition to the defendant's motion to dismiss).

4

1    damages as determined by the trier of fact;" (4) "attorney's fees, costs of court, and
2    out-of-pocket expenses;" and (5) "pre-and post-judgment interest at the highest rate(s)
3    allowed by law[.]"  (*See generally* FAC).

4    ## B.    **Procedural Background**

5      Plaintiff filed the initial iteration of the complaint on May 3, 2024.  (Notice of
6    Removal, Docket No. 1 at 3; *see also* Notice of Removal, Docket No. 1-1, Ex. A-1,
7    Compl.).  Plaintiff failed to serve the first iteration of the complaint and filed a First
8    Amended Complaint ("FAC") on January 22, 2025.  (Notice of Removal at 3; *see also*
9    FAC).  Plaintiff served Defendant Blue Shield on or around January 27, 2025, and
10   served Anthem on February 6, 2025.  (Notice of Removal at 3; *see also* Decl. of
11   Jeremy M. Doberman ISO MTR ("Doberman Decl. ISO MTR"), Docket No. 17-4,
12   Ex. C ("Affidavit of Service on Blue Shield")); Doberman Decl., Docket No. 17-5,
13   Ex. D ("Affidavit of Service on Anthem")).  Plaintiff and Defendants (the "Parties")
14   agreed to extend Defendants' time to respond to the FAC until April 22, 2025.
15   (Notice of Removal at 3).

16     On March 13, 2025, Plaintiff for the first time provided the Unredacted Claims
17   Spreadsheet to Defendants.  (Decl. of Jessamyn Vedro ISO Notice of Removal
18   ("Vedro Decl. ISO Removal"), Docket No. 1-3 ¶ 3).  Thereafter, Defendant Anthem
19   became aware "that at least 11 of the [Disputed] [C]laims pertain to members with
20   health plans governed by the Employee Retirement Income and Security Act of 1974
21   [("ERISA")][,]" and that "at least 1[6][6] of the [Disputed] [C]laims pertain to members
22   with health plans governed by the Medicare Act."  (*Id.* ¶¶ 4-5).[7]  Accordingly, on
23   April 11, 2025, Defendants filed a joint notice of removal, invoking 28 U.S.C.

24   _____

25   [6] The Court notes that while the Notice of Removal indicated there were 17 claims
      governed by the Medicare Act, Defendant Anthem states in its Motion that there are
26   16 claims governed by the Medicare Act.  (*Compare* Vedro Decl. ISO Removal ¶ 3
      *with* Decl. of Scott Hicks ISO of MTD ("Hicks Decl. ISO MTD"), Docket No. 12-6
27   ¶ 7).  Based on a review of Exhibit 1 attached to the FAC, it appears there are 16
      claims.  (*See* FAC at Ex. 1).
28   [7] Plaintiff does not object to this evidence or dispute this fact.

§§ 1331, 1332, 1441, 1442(a)(1) and 1446.  (*See* Notice of Removal).  Defendants

contend in their notice of removal that their removal was timely, as it was filed

"within 30 days of when Defendant received the [U]nredacted [C]laims [S]preadsheet

from [Plaintiff] and first ascertained that the case [was] removable." (*Id.* at 4)

(invoking 28 U.S.C. § 1446(b)(3)).

On April 18, Defendant Anthem filed the MTD presently before the Court.

(MTD, Docket No. 12).  That same day, Defendant Blue Shield filed its Answer.

(Answer, Docket No. 13).  On May 12, Plaintiff filed the MTR presently before the

Court.  Both Motions are fully briefed.

**II. DISCUSSION**

Before the Court are the Anthem's MTD (*see* MTD) and Plaintiff's MTR.  (*See*

MTR).  The Court begins by assessing Plaintiff's MTR before turning to Defendants'

MTD.  For the reasons explained herein, the Court **DENIES** Plaintiff's MTR and

**GRANTS** Defendant Anthem's MTD, dismissing the action in its entirety without

prejudice.  As explained below, some claims are dismissed with prejudice.

**A.    The Court DENIES the Motion to Remand[8]**

*1. Legal Standard*

Under 28 U.S.C. § 1446(b)(1) ("Section 1446(b)(1)"), a defendant must

generally remove an action within 30 days of receiving the complaint.  *See* 28 U.S.C.

§ 1446(b)(1).  If, however, "the case stated by the initial pleading is not removable, a

notice of removal may be filed within 30 days after receipt of a copy of an amended

---

[8] Defendants Anthem and Blue Shield argue that Plaintiff failed to sufficiently meet
and confer about the MTR in violation of Local Rule 7-3. (Anthem's Opp'n to MTR
at 2; Blue Shield's Opp'n to MTR, Docket No. 22 at 17).  They both contend that the
MTR was only mentioned in passing while conferring about the MTD, and that
possibility of filing the MTR was only then confirmed on May 12, 2025, the day it
was filed. (*Id.*; *see also* MTR).  Though the Court declines to deny the MTR on these
grounds – finding denial on the merits appropriate – the Court admonishes Plaintiff's
counsel to meaningfully comply with the local rules and this Court's Standing Order,
which strictly enforces Local Rule 7-3. (*See* Standing Order at 10-11).  Any failure to
do so in the future may result in sanctions.

6

1 pleading, motion, order or other paper from which it may first be ascertained that the

2 case is one which is or has become removable." *Id.* § 1446(b)(3) ("Section

3 1446(b)(3)").  Many circuits, including the Ninth Circuit, have adopted the

4 "unequivocally clear and certain" standard, which holds that the "removal clock

5 begins" only once "an amended pleading, motion, order, or other paper . . . make[s] a

6 ground for removal unequivocally clear and certain. . ." *Dietrich v. Boeing Co.*, 14

7 F.4th 1089, 1095 (9th Cir. 2021).  Thus, whether Section 1446(b)(1) or Section

8 1446(b)(3) applies is dependent on the nature of the initial pleadings.

9      A district court determines "whether removal is proper by first determining

10 whether a federal question exists on the face of the plaintiff's well-pleaded

11 complaint." *Damon v. Korn/Ferry Intern.*, No. CV 15-2640-R, 2015 WL 2452809, at

12 *2 (C.D. Cal. May 19, 2015) (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392

13 (1987)).  A case generally has a federal question "when federal law creates the cause

14 of action asserted." *Gunn v.* Minton, 568 U.S. 251, 257 (2013).  There is an exception

15 to this rule, however, "'when a federal statute wholly displaces the state-law cause of

16 action through complete preemption.'" *Damon*, 2015 WL 2452809, at *2 (quoting

17 *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003)).  To that end, "'[w]hen the

18 federal statute completely preempts the state-law cause of action, a claim which

19 comes within the scope of that cause of action, even if pleaded in terms of state law, is

20 in reality, based on federal law." *Id.* (quoting *Beneficial Nat'l Bank*, 539 U.S. at 8).

21      The Supreme Court has held that "ERISA provides the exclusive remedy for

22 actions to recover benefits under an ERISA plan, and that such suits arise under

23 federal law and are removable to federal court." *Hassankhel v. Aetna Life Ins. Co.*,

24 No. CV 16-02387 AB, 2016 WL 10999321, at *2 (C.D. Cal. May 18, 2016).

25 Therefore, "'[a]ny state-law cause of action that duplicates, supplements, or supplants

26 the ERISA civil enforcement remedy conflicts with the clear congressional intent to

27 make the ERISA remedy exclusive and is therefore preempted.'" *Id.* (quoting *Aetna

28 Health, Inc. v. Davila* ("*Davila*"), 542 U.S. 200, 209 (2004)).  Complete preemption

7

1  "confers subject matter jurisdiction for claims that nominally arise under state law."

2  *Fossen v. Blue Cross & Blue Shield of Montana, Inc.*, 660 F.3d 1102, 1107 (9th Cir.

3  2011). Where "at least some of the contracts at issue in [the] action are ERISA plans,

4  [the] lawsuit falls within the scope of ERISA [Section] 502(a)." *Id.* at 1109.

5         The federal officer removal statute ("Section 1442(a)") also authorizes

6  "removal of a civil action brought against any person 'acting under' an officer of the

7  United States 'for or relating to any act under color of such office.'" *Leite v. Crane*

8  *Co.*, 749 F.3d 1117, 1120 (9th Cir. 2014) (quoting 28 U.S.C. § 1442(a)(1)). To

9  invoke this statute, the removing defendant must show that "(1) it is a 'person' within

10  the meaning of the statute[;] (2) a causal nexus exists between a plaintiff['s] claims

11  and the actions [the defendant] took pursuant to a federal officer's direction[;] and

12  (3) it has a 'colorable' federal defense to [a] plaintiff['s] claims." *Id.*

13              *2. Analysis*

14         Plaintiff presents two main arguments as to why this action should be

15  remanded. Plaintiff asserts both that (1) removal was untimely, and that (2) removal

16  was improper because no claims are completely preempted by ERISA and the federal

17  officer removal statute is inapplicable. For the reasons explained herein, the Court

18  disagrees with Plaintiff and **DENIES** the MTR.[9]

19              a.  Removal Was Timely Under Section 1446(b)(3)

20         The Ninth Circuit has emphasized that " . . . notice of removability under

21  [Section 1446(b)] is determined through examination of the four corners of the

22  applicable pleadings, not through subjective knowledge or a duty to make further

23  inquiry." *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005).

24

25  [9] Plaintiff also argued it should be awarded the "attorney's fees incurred in filing this
26  motion[,]" as is permitted by 28 U.S.C. § 1447(c) ("Section 1447(c)"). (Mot. at 15).
    The award of attorney's fees and expenses under Section 1447(c) is appropriate "only
27  where the removing party lacked an objectively reasonable basis for seeking
    removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Having
28  concluded removal was proper in this case, Plaintiff's request is denied as moot.

8

Inherently, then, "whether [a] defendant had subjective knowledge, or whether [a] defendant conducted sufficient inquiry[,]" is irrelevant to the analysis. *Id.* at 697.

The Court begins by assessing whether removal was clear from the initial pleadings such that Section 1446(b)(1) applies, or whether "the case stated by the initial pleading [wa]s *not* removable," *Id.* § 1446(b)(3) (emphasis added), such that Section 1446(b)(3) applies. *Dietrich*, 14 F.4th at 1095. The Court concludes that the case stated by the initial pleading was not removable, such that Section 1446(b)(3) applies.

Plaintiff argues that the Redacted Claims Spreadsheet attached to the FAC – which included the "date the service was performed and the billed amount" (MTR at 7) – provided sufficient notice to Defendants that the case was removable from the initial pleadings. (*Id.* at 6). Defendant Anthem contends that, as it "administers health plans for over nine million members in California," the "task of identifying ***specific claims*** based solely on the dates of service and billed amounts is akin to finding a needle in a football field-sized haystack." (Anthem's Opp'n to MTR, Docket No. 20 at 5) (emphasis in original). Defendant Anthem emphasizes that "[w]ithout additional information, including Patient Names, claim numbers, etc., any attempt to identify claims would be speculative at best and grossly inefficient." (*Id.*). The Court agrees with Defendant Anthem.

As expressly emphasized by the Ninth Circuit, a defendant has no duty of inquiry in this context. *Harris*, 425 F.3d at 694. Plaintiff's providing Defendants with the Redacted Claim Spreadsheet, which contained over a thousand anonymous claims – identified not by Insureds' names or even claim number, but by only dates of service and billed amounts[10] – would inherently *require* Defendants to perform their

---

[10] The Redacted Claims Spreadsheet also contained a column entitled "Accession [Number]" which Defendant Anthem explains "means nothing" to it and "is likely [Plaintiff] Abira's tracking number[.]" (Anthem's Opp'n to MTR at 3; *see also* FAC, Ex. 1).

1  own inquiry as to whether ERISA or the Medicare Act were potentially implicated.

2  Significantly, though, even if this effort were required of Defendants, without

3  Plaintiff's providing additional information, any inquiry was logistically nearly

4  impossible.  Particularly given the sheer volume of Insureds Defendant Anthem

5  serves, the Court concludes that the case was not *clearly* removable from initial

6  pleadings, such that Section 1446(b)(3) applies.

7       Finding that Section 1446(b)(3) applies, the Court looks to the "four corners" of

8  the "other paper" at issue that purportedly made it "unequivocally clear and certain"

9  that the case was removable.  *See Harris*, 425 F.3d at 694 (emphasizing that the focus

10  of the analysis is what is revealed in the initial pleading or subsequent papers, rather

11  than "the defendant's subjective knowledge as a test for notice").  Here, Defendants

12  contend that Plaintiff's provision of the Unredacted Claims Spreadsheet on March 13,

13  2025, is the "other paper" that made it "unequivocally clear and certain" that the case

14  was removable.  (Anthem's Opp'n to MTR at 5-6; Blue Shield's Opp'n to MTR at 4-

15  6; *see also* Notice of Removal at 4).  The Unredacted Claims Spreadsheet provided

16  the Insureds' full names – as well as "claim numbers for a handful of the" claims at

17  issue[11] – which allowed Defendants to identify that some of the health benefits plans

18  "were governed by ERISA and/or the Medicare Act."  (Anthem's Opp'n to MTR at

19  6).  Prior to having such information, it was "practically impossible" to identify

20  whether ERISA or the Medicare Act were implicated at all within the 1,326

21  anonymous claims.  (*Id.*).  Given that Defendants removed the action by April 11 –

22  within 30 days of receiving the Unredacted Claim Spreadsheet, which for the first

23  time provided sufficient information that it was unequivocally clear and certain that

24

25  _____

26  [11] Defendant Anthem notes that Plaintiff only provided claim numbers for "less than
    10%" of the Disputed Claims, which it contends are critical for identifying the

27  underlying plan.  (Anthem's Opp'n to MTR at 5).  It is not clear to the Court,
    therefore, whether there are potentially more of the Disputed Claims that relate to

28  ERISA- or Medicare-governed plans, which is relevant for the MTD.

the case was removable – the Court concludes removal was timely.  *Dietrich*, 14 F.4th at 1095; *see also* 18 U.S.C. § 1446(b)(3).

           b.  <u>Removal Was Proper, as Plaintiff's Claims that Pertain to</u>
<u>ERISA-Governed Plans Are Completely Preempted by ERISA</u>

"ERISA § 502(a) [("ERISA Section 502(a)"] 'sets forth a comprehensive civil enforcement scheme' that completely preempts state-law 'causes of action within the scope of th[es]e civil enforcement provisions . . .'" *Fossen*, 660 F.3d at 1107 (quoting *Davila*, 542 U.S. at 208-09).[12]  The Supreme court developed a "two-prong test" for determining whether an asserted state-law claim is completely preempted by ERISA § 502(a)(1)(B)." *Damon*, 2015 WL 2452809, at *2. (citing *Davila*, 542 U.S. at 210). A "'state-law cause of action is preempted by § 502(a)(1)(B) only if both prongs of the test are satisfied." *Id.* (quoting *Marin*, 581 F.3d at 947).  "[F]ederal question jurisdiction exists if at least one of plaintiff's claims is completely preempted." *Heldt v. Guardian Life Ins. Co. of Am.*, No. 16-cv-00885-BAS-NLS, 2017 WL 980181, at *4 (S.D. Cal. Mar. 13, 2017) (citing *Fossen*, 660 F.3d at 1109).

      The first prong that must be satisfied is that "an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B)[.]'" *Damon*, 2015 WL 2452809, at *2 (quoting *Davila*, 542 U.S. at 210).  The second prong is that "'no other independent legal duty' is implicated." *Id.* (quoting *Davila*, 542 U.S. at 210).  A central inquiry is whether the "state-law cause of action merely duplicate[s] rights and remedies available under ERISA[.]" *Id.*

---

[12] The Court notes "'[t]here are two strands of ERISA preemption: (1) express preemption under ERISA § 514(a) ("ERISA Section 514(a)"), 29 U.S.C. § 1144(a); and (2) preemption due to a conflict with ERISA's exclusive remedial scheme set forth in [ERISA Section 502(a), 29 U.S.C. § 1132(a)].'" *Fossen*, 660 F.3d at 1107 (quoting *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1081 (9th Cir. 2009) (internal quotation omitted).  Here, the MTR is concerned with conflict preemption – which Defendants argue amounts to complete preemption, as explained herein – under ERISA Section 502(a).  Express preemption under Section 514(a) is discussed further below with respect to the MTD.

Defendants argue that removal was proper because both prongs of the test established by *Davila* are satisfied for the 11 Disputed Claims pertaining to ERISA-governed plans (the "Disputed ERISA Claims").  (Anthem Opp'n to MTR at 7-9; Blue Shield's Opp'n to MTR at 7-12; *see also* Notice of Removal at 4-8).  The Court agrees for the reasons explained herein.

### i.  First Prong of the *Davila* Test Is Satisfied for the 11 Disputed ERISA Claims

"Under *Davila*, the first question is whether [the plaintiff] could have brought [its] complaint under [Section] 502(a)."  *Fossen*, 660 F.3d at 1109.  Section 502(a) allows "an ERISA plan participant or beneficiary" to bring a civil action to "'recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.'"  *Blue Cross of Cal. v. Anesthesia Care Assoc. Med. Grp., Inc.*, 187 F.3d 1045, 1050-51 (9th Cir. 1999) (quoting Section 502(a)).  Though health care providers are "not 'beneficiaries' within the meaning of ERISA's enforcement provisions[,]" they may bring claims "'derivatively, relying on its patients' assignment of their benefits claims.'"  *DB Healthcare, LLC v. Blue Cross Blue Shield of Arizona, Inc.*, 852 F.3d 868, 874 (9th Cir. 2017) (quoting *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1289 (9th Cir. 2014), *cert denied, United Healthcare of Ariz. V. Spinedex Physical Therapy USA, Inc.*, ---U.S.--- (2015)); *see also Misic v. The Bldg. Serv. Emps. Health & Welfare Tr.*, 789 F.2d 1374, 1379 (9th Cir. 1986) (demonstrating that a provider of health care services that obtains an assignment of benefits from a participant or beneficiary of an employer-sponsored health benefit plan may bring a civil suit to recover benefits due under the plan).  Where "at least some of the contracts at issue in [the] action are ERISA plans, [the] lawsuit falls within the scope of ERISA [Section] 502(a)."  *Fossen*, 660 F.3d at 1109; *see also Samaan v. Anthem Blue Cross Life and Health Ins. Co.*, 2021 WL 2792307, at *4 (C.D. Cal. Mar. 10, 2021) (emphasizing that causes of action for breach of

12

covenant and breach of covenant of good faith and fair dealing relating to ERISA-regulated plans fall within the scope of Section 502(a)).

Plaintiff argues that, as it is neither a "participant" or "beneficiary" within the meaning of ERISA Section 502(a), it would not have standing under ERISA to recover benefits owed to it. (Mot. at 10). Defendants argue that because Plaintiff's allegations "are founded upon the assignment of benefits of health benefit plans that it purportedly received from [Defendants'] [Insureds][,]" the first prong of the *Davila* test is met because Plaintiff derivatively "could have brought this claim as an ERISA benefits determination cause of action under [ERISA Section 502(a)][.]" (Anthem Opp'n to MTR at 7; *see also* Blue Shield's Opp'n to MTR at 10). The Court agrees with Defendants.

Here, Plaintiff expressly alleges that its suit in its entirety is premised on "the contractual obligations which arose between Plaintiff and Defendants via the assignments of benefits executed by the [I]nsureds . . ." (FAC ¶¶ 23, 16-18). This assignment of benefits transferred to Plaintiff the Insureds' "right to payment under a plan and [their] right to sue for that payment." (*Id.* ¶ 23). ERISA Section 502(a) "essentially 'allows an action in the form of breach of contract, the contractual instrument being the [health plan governed by ERISA]' that Plaintiff alleges Defendant[s] breached." *Heldt*, 2017 WL 980181, at *5 (quoting *Nunez v. Monterey Peninsual Eng'g*, 867 F.Supp. 895, 906 (N.D. Cal. 1994)). As highlighted by Defendants in the notice of removal, some of the Disputed Claims pertain to Insureds with health plans governed by ERISA. (Notice of Removal at 4; *see also* Decl. of Allie Willis ISO Removal ("Willis Decl."), Docket No. 1-6 ¶ 10; Vedro Decl. ISO Removal ¶ 4). Plaintiff, therefore, as "assignee of beneficiaries" of ERISA-governed plans "has standing to assert the claims of his assignors." *Misic*, 789 F.2d at 1379.

Nor does it matter that not *all* claims among the Disputed Claims pertain to Insureds with health plans governed by ERISA. Rather, courts evaluate "whether an individual *claim* is completely preempted[,]" and, "[i]f it is, the existence of other

1   non-preempted [medical] claims will not save the case from federal removal

2   jurisdiction." *Melamed v. Blue Cross of California*, 557 Fed.Appx 659, 661 (9th Cir.

3   2014) (emphasis in original) (citing *Fossen*, 660 F.3d at 1109-10).

4          Citing to *Catholic Healthcare West-Bay Area v. Seafarers Health & Benefits*

5   *Plan* ("*Seafarers*"), Plaintiff argues that the first prong of the *Davila* test is not met

6   because it "has not alleged a derivative claim under ERISA (even though it could have

7   set forth such a claim)."  (Reply, Docket No. 24 at 8); *Seafarers*, 321 Fed.Appx. 563,

8   564 (9th Cir. 2008).  The case – along with the other cases cited to by Plaintiff[13] – is

9   inapposite.  In *Seafarers*, the plaintiff sued based on *direct* contractual relationships

10  that arose between the plaintiff and defendant, rather than suing based on an

11  assignment of benefits.  *Seafarers*, 321 Fed.Appx. at 564.  In that case, the complaint

12  "d[id] not even mention an assignment and d[id] not predicate its alleged right to

13  recovery on any assignment."  *Id.*  Accordingly, the Court finds the instant matter

14  distinguishable, where Plaintiff explicitly brings its suit based on the assignment of

15  benefits.  (*See* FAC ¶¶ 16-18).  The Court, therefore, concludes that the first prong of

16  the *Davila* test is satisfied.

17                    **ii.  Second Prong of the *Davila* Test Is Satisfied for the 11**

18                              **Disputed ERISA Claims**

19         For the second prong, "'it is not enough for complete preemption that the

20  contract and tort claims 'relate to' the underlying ERISA plan, or that ERISA

21  § 502(a)(1)(B) may provide a similar remedy."  *Damon*, 2015 WL 2452809, at *2

22

---

23  [13] Plaintiff also cites to *Marin*, 581 F.3d at 948.  (Reply at 7-8).  In that case, the suit
    was "based on some other legal obligation[,]" – namely, an oral contract that created
24  "the asserted obligation."  *Id.*  In that case, the claims were not completely preempted
    by ERISA because the second prong of the *Davila* test was not satisfied.  *Id.*  In the
25  instant matter, there is no independent legal obligation alleged, as discussed below,
    such that this argument fails.  The same is true of *Blue Cross of Cal.*, in which the
26  claims there "ar[ose] out of separate agreements for the provision of goods and
    services," such that those claims were not completely preempted.  187 F.3d at 1052.
27  The district court cases cited to by Plaintiff suffer the same infirmities.  Here, where
    the FAC contains no allegations of separate legal obligations, this argument fails.
28

                                        14

(quoting *Marin*, 581 F.3d at 949).  Rather, the question is "'whether the complaint relies on a legal duty that arises independently of ERISA.'"  *Id.* (quoting *Marin*, 581 F.3d at 949).  "This question requires a practical, rather than a formalistic, analysis because '[c]laimants cannot obtain relief by dressing up an ERISA benefits claim in the garb of a state law tort.'"  *Fossen*, 660 F.3d at 1111 (quoting *Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1225 (9th Cir. 2005)).

Plaintiff argue that "none of [its] claims is based on an obligation under an ERISA plan, nor does the viability of the claim depend on the presence of an ERISA plan."[14] (MTR at 12).  But Defendants highlight that "[n]othing in the [FAC] implicates an independent legal duty aside from the obligations of the respective parties set forth in the [health] plan documents."  (Anthem's Opp'n to MTR at 9; *see also* Blue Shield's Opp'n to MTR at 11).  The Court agrees with Defendants, as explained herein.

Without explaining what such duties are, and citing only to *Marin*, Plaintiff contends that its "claims are based on other, independent legal duties recognized in *Davila*."  (*Id.*).  As highlighted by Defendant Blue Shield, *Marin* is "readily distinguishable" from the instant matter.  (Blue Shield's Opp'n to MTR at 11).  There, as already noted above, the claims were based on an oral contract between the parties. *Marin*, 581 F.3d at 950.  Accordingly, there *was* an independent legal duty at play, such that the second prong of the *Davila* test was not satisfied.  Here, by contrast, the FAC alleges no such oral contract or other arrangement through which legal duties arose.

As noted, "federal question jurisdiction exists if at least one of Plaintiff's claims is completely preempted."  *Heldt*, 2017 WL 980181, at *4.  The Court has already found the first prong satisfied for the 11 Disputed ERISA Claims.  Turning to the

---

[14] The Court notes that Plaintiff's argument appears to be based on the legal standard for express preemption under ERISA Section 514(a), rather than complete conflict preemption ERISA Section 502(a).

second prong of the *Davila* test, Plaintiff's entire FAC is based on the obligations
arising from the Insureds' assignment of benefits to it.  (FAC ¶¶ 16-18).  The contracts
at issue are the health plan documents – some of which are ERISA-governed plans.
(*Id.*).  The 11 Disputed ERISA Claims, therefore, cannot "arise independent of ERISA
or the plan terms[.]"  *Id.*  The Court, therefore, concludes that the second prong of the
*Davila* test is satisfied for the 11 Disputed ERISA Claims, such that federal question
jurisdiction exists.[15]

c.  Removal Was Also Proper Under Section 1442(a)

Under Section 1442(a), a civil action may be removed when brought against
any person "acting under" an officer or agency of the United States "for or relating to
any act under color of such office."  42 U.S.C. § 1442(a).  The Supreme Court has
emphasized that the words "acting under" within the statute "are broad" and that the
statute should be "liberally construed."  *Watson v. Philip Morris Cos., Inc.*, 551 U.S.
142, 147 (2007).

A defendant may remove an action pursuant to Section 1442(a) if it can show
"(1) it is a 'person' within the meaning of the statute,[16] (2) a causal nexus exists
between [the] plaintiffs' claims and the actions [the defendant] took pursuant to a
federal officer's direction, and (3) it has a 'colorable' federal defense to [the]
plaintiffs' claims."[17]  *Leite v. Crane Co.*, 749 F.3d 1117, 1120 (9th Cir. 2014) (citing
*Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006)).

---

[15] The Court adds that "any non-preempted state-law claims [a]re 'so related to claims
in the action within such original jurisdiction that they form part of the same case or
controversy.'"  *Fossen*, 660 F.3d at 1113 n.7 (quoting 28 U.S.C. § 1441(c)) (affirming
the district court's exercise of supplemental jurisdiction over the claims that are not
completely preempted).
[16] Plaintiff did not contest this element in the MTR or its Reply to Defendants'
opposing briefs.  This element is satisfied because corporations, such as Defendants,
are "persons" for purposes of the statute.  *See* 1 U.S.C. § 1 (defining the word person
to include corporations).
[17] Plaintiff did not contest this element in the MTR or its Reply to Defendants'
opposing briefs.  Based on the Notice of Removal, this element is satisfied, where
Defendants present the "colorable" defenses of administrative exhaustion, sovereign

1      A corporation is "acting under" a federal officer or agency when it is involved

2  in "an effort to assist, or to help carry out, the federal superior's duties or tasks of the

3  federal superior." *Watson*, 551 U.S. at 152 (citing *Davis v. South Carolina*, 107 U.S.

4  597, 600 (1883)).  Private entities meet this standard when the relationship is

5  "unusually close," such as when the private entity "perform[s] a job that, in the

6  absence of a contract . . . the Government itself would have had to perform[.]"  *Id.* at

7  153, 147.

8      Medicare is a federal health insurance program providing coverage to

9  individuals over 65 and certain individuals with disabilities.  42 U.S.C. §§ 1395 *et seq.*

10  Congress created the Medicare Advantage Program ("MA Program") in Part C of the

11  Medicare Act ("Part C"), which establishes private insurance plans as alternatives to

12  original Medicare.  *Id.* § 1395w-21-28.  Medicare Advantage Organizations

13  ("MAOs") are private organizations that operate under contract with the Center for

14  Medicare and Medicaid Services ("CMS"), a federal agency, to provide federal

15  subsidized health insurance under Part C.  *Inchauspe v. Scan Health Plan*, No. 2:17-

16  cv-06011-CAS, 2018 WL 566790, at *3 (C.D. Cal. Jan. 23, 2018).  "Medicare

17  coverage determinations by MAOs are made pursuant to criteria established by the

18  CMS."  *Id.*  MAOs that administer benefits under Part C of Medicare "fall within the

19  category of highly regulated private contractors described in *Watson* and thus are

20  'acting under' CMS in a manner that entitles them to removal under [Section]

21  1442(a)."  *Id.*  Defendants are MAOs, as they administer benefits under Part C.[18]

22  (Notice of Removal at 9-10; Vedro Decl. ISO Removal ¶ 5; Willis Decl. ISO Removal

23  ¶ 5).

24

25

26  immunity, Plaintiff's failure to state a claim and Defendants' sufficiently issuing
reimbursements in accordance with the federal laws. *See Willingham v. Morgan*, 395

27  U.S. 402, 406-07 (1969) (emphasizing that such defenses need only be colorable);
(*see* Notice of Removal at 9-13).

28  [18] Plaintiff does dispute this fact.

17

1    Plaintiff also argues that Defendants cannot satisfy the second element of

2  Section 1442(a) – establishing a causal nexus between the plaintiff's claims and the

3  actions the defendants took pursuant to a federal officer or agency's direction –

4  because "[b]eing a plan administrator of Medicare does not always deem a provider as

5  acting under the authority of CMS." (Mot. at 14).[19]  Defendants argue that "[i]f CMS

6  did not delegate authority to [Defendants], CMS would be obligated to administer

7  Medicare benefits itself through Parts A and B[,]" such that "[Defendants] thus

8  fulfill[] a government task that CMS would have had to undertake itself in Anthem's

9  absence[.]" (Anthem Opp'n to MTR at 11; *see also* Blue Shield's Opp'n to MTR at

10  12-15).  The Court agrees with Defendants.

11    "By administering Medicare benefits, [MAOs] help[] CMS 'fulfill [a] basic

12  governmental task.'" *Yeomans v. Blue Shield of Cal.*, 712 F.Supp.3d 1336, 1342

13  (C.D. Cal. 2024) (quoting *Watson*, 551 U.S. at 153).  Absent the support of MAOs

14  such as Defendants, "'CMS would be obligated to administer Medicare benefits

15  through Parts A and B to those individuals who currently elect Part C coverage.'" *Id.*

16  (quoting *Body & Mind Acupuncture v. Humana Health Plan, Inc.*, No. 1:16cv211,

17  2017 WL 653270, at *5 (N.D. W. Va. Feb. 16, 2017)).   To that end, the activities of

18  MAOs, such as Defendants, "'involve an effort to assist, or to help carry out, the

19  duties or tasks of' CMS in a manner much more significant than 'simply complying

20  with the law.'" *Id.* (quoting *Watson*, 551 U.S. at 153).  Not only that, but MAOs'

21  "benefits determinations and quality of care are subject to detailed regulations and

22  administrative review by CMS, showing that their relationship is 'an unusually close

23  one involving detailed regulation, monitoring, and supervision.'" *Id.* (quoting

24  *Watson*, 551 U.S. at 153).  In sum, the Court concludes that removal was also proper

25  pursuant to Section 1442(a), where Defendants are MAOs "acting under" CMS.

26

27

28

---

[19] Though the Court need not reach this issue – having found removal proper due to
complete preemption of the 11 Disputed ERISA Claims – it briefly addresses it.

18

**B.      The Court GRANTS Defendant Anthem's Motion to Dismiss**

### 1.  Legal Standard

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  The complaint need not include detailed factual allegations but must provide more than a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.  Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate "only when [the complaint] fails to state a cognizable legal theory or fails to allege sufficient factual support for its legal theories." *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016); *see* Fed. R. Civ. P. 12(b)(6).

"[The] court must 'draw all reasonable inferences in favor of the nonmoving party'" and take its non-conclusory allegations as true.  *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014)).  The court is not required, however, "to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions . . .").

Pursuant to Fed. R. Civ. P. 15(a)(2), when a motion to dismiss is granted, courts should "freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "'In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." leave should be granted in conformity with Rule 15(a)(2).  *Hall v. City of Los Angeles*, 697 F.3d 1059, 1073 (2012) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

### 2.  Analysis

Defendant Anthem presents three main arguments in support of its MTD, which the Court addresses in turn.  First, Defendant Anthem argues that Plaintiff's state law

1    claims with respect to the 11 Disputed ERISA Claims are completely preempted and

2    that Plaintiff lacks standing due to valid and enforceable anti-assignment provisions.

3    The Court agrees.  Second, Defendant Anthem argues that the 11 Disputed Claims

4    arising under the Medicare Act (the "Disputed Medicare Claims") are subject to

5    dismissal for failure to exhaust administrative remedies.  The Court agrees.  Finally,

6    with respect to the remainder of the Disputed Claims, Defendant Anthem argues that

7    Plaintiff fails to state a claim with respect to all three causes of action.  The Court

8    agrees.  For the reasons stated herein, the Court **GRANTS** the MTD, thereby

9    dismissing the action in its entirety without prejudice.  As further explained below,

10   some claims are dismissed with prejudice due to futility of amendment.

11                    a.   Preemption under ERISA Section 514(a) and Standing

12           Under ERISA Section 514(a), any state law cause of action – including

13   "common law" causes of action – that "'relates to any employee benefit plan,'" is

14   expressly preempted.  *Oregon Teamster Emps. Tr. v. Hillsboro Garbage Disposal,*

15   *Inc.* ("*Hillsboro*"), 800 F.3d 1151, 1155 (9th Cir. 2015) (quoting *Providence Health*

16   *Plan v. McDowell*, 385 F.3d 1168, 1172 (9th Cir. 2004)); *see also* 29 U.S.C.

17   § 1144(a).  A state law cause of action "'relates to' an ERISA plan 'if it has a

18   connection with *or* reference to such plan.'"  *Id.* (quoting *McDowell*, 385 F.3d at

19   1172) (emphasis added).  In determining whether there is a "'reference to'" to an

20   ERISA plan, courts focus on "'whether the claim is premised on the existence of an

21   ERISA plan, and whether the existence of the plan is essential to the claim's

22   survival.'"  *Id.* (quoting *McDowell*, 385 F.3d at 1172).  In determining whether there

23   is a "'connection with'" such plan, Courts apply the "'relationship test,'" assessing

24   whether the "'claim bears on an ERISA-regulated relationship, e.g., the relationship

25   between plan and plan member, between plan and employer, between employer and

26   employee.'"  *Id.* (quoting *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1082 (9th Cir. 2009)).

27           The Court begins by assessing whether the three common law causes of action

28   – in terms of the 11 Disputed Claims – are preempted by ERISA Section 514(a).  The

                                                    20

Court concludes they are.  The Court then assesses whether Plaintiff lacks standing

due to anti-assignment provisions within those plans.  The Court concludes it does.

As such, the Court dismisses the 11 Disputed ERISA Claims with prejudice.

### i.    State Law Causes of Action with Respect to 11 Disputed ERISA Claims Are Preempted

Defendant contends that the 11 Disputed ERISA Claims should be dismissed

due to preemption under ERISA Section 514(a).  (MTD at 7-10).  Plaintiff argues that

"[t]he state law claims at issue here – breach of contract, breach of covenant of good

faith and fair dealing and quantum meruit / unjust enrichment – neither 'refer to' nor

have an 'impermissible connection with' an ERISA plan."  (Opp'n to MTD at 8).

Plaintiff contends that nothing in the FAC "suggest[s] that all of the claims brought in

this case require an examination of an ERISA plan."  (*Id.* at 8-9).  Plaintiff

misunderstands the inquiry.

Whether or not any ERISA plans are explicitly referenced "in the first

instance[,]" is of no import.  (*Id.* at 9).  Rather, the question is whether Plaintiff's state

law causes of action inherently are premised "'on the existence of an ERISA plan'"

and whether the existence of such plan is "'essential to the claim's survival.'"

*Hillsboro*, 800 F.3d at 1155 (quoting *McDowell*, 385 F.3d at 1172).

Defendant Anthem highlights that the FAC alleges that "[Defendant] Anthem is

obligated to pay for services rendered to Anthem members under health plans or

policies issued by Anthem[,]" and that "[a]bsent the existence of those health plans,

Anthem would not be involved in the matter at all[.]"  (MTD at 8).  The Court agrees.

Because there are no allegations regarding a contract between Plaintiff and

Defendants, the breach of contract claim – with respect to the 11 Disputed ERISA

Claims[20] – is implicitly founded on the existence of an ERISA plan.  (*See* FAC ¶¶ 6,

16-18, 23) (emphasizing that legal duties arose by virtue of "assignment of benefits").

---

[20] The Court highlights that the analysis within this section pertains only to the 11
Disputed ERISA Claims.

1    Without the relevant ERISA plan, there would be no basis for a breach of contract

2    claim; accordingly, the existence of the plan is "'essential to the claim's survival.'"

3    *Hillsboro*, 800 F.3d at 1155 (quoting *McDowell*, 385 F.3d at 1172).  The same can be

4    said of claim for breach of the covenant of good faith and fair dealing.  Because there

5    was no relationship between Plaintiff and Defendant absent the existence of the

6    ERISA plans, the cause of action is implicitly founded on the existence of the ERISA

7    plan; accordingly, the existence of the plan is "'essential to the claim's survival.'"

8    *Hillsboro*, 800 F.3d at 1155 (quoting *McDowell*, 385 F.3d at 1172).  Finally, the

9    conclusion is no different for the claim for quantum meruit / unjust enrichment.  *See*

10   *Fast Access Specialty Therapeutics v. UnitedHealth Grp.*, 532 F.Supp.3d 956, 969-70

11   (S.D. Cal. 2021) (finding unjust enrichment and quantum meruit claims preempted

12   where they depended on terms of the ERISA plan).  The Court, therefore, agrees with

13   Defendant Anthem that all three state law causes of action – with respect to the 11

14   Disputed ERISA Claims – "'relate[] to' an ERISA plan" given the implicit "reference

15   to such plan.'"  *Hillsboro*, 800 F.3d at 1155 (quoting *McDowell*, 385 F.3d at 1172).

16       Plaintiff's citation to *Nutrishare, Inc. v. Conn. Gen. Life. Ins. Co.* fails to

17   support its argument.  No. 2:15-cv-00351-JAM-AC, 2015 WL 4225513, at *2 (E.D.

18   Cal. Jul. 10, 2015).  In that case, the plaintiff was an out-of-network provider, like

19   Plaintiff, that submitted bills to the defendant healthcare plan provider.  *Id.* at *1.

20   Defendant moved to dismiss based on ERISA preemption.  *Id.*  The court emphasized

21   that a party can "avoid ERISA preemption if it identifies a separate contract between

22   the parties or alleges a specific misrepresentation that does not require interpretation

23   of the ERISA plan and would not affect the relationships of the ERISA participants."

24   *Id.*  There, as here, there was no separate contract between the parties.  *Id.*  Rather, the

25   alleged failure to pay benefits owed to plaintiff was "based on [the patients']

26   healthcare plans provided by [the defendant]."  Because the recovery was "based on

27   [the plaintiff's] status as assignee," they were properly considered to relate to an

28   ERISA plan.  The court, therefore, dismissed the claims – including a claim for breach

of contract and a claim for breach of covenant of good faith and fair dealing – as preempted.  The Court finds, therefore, that *Nutrishare, Inc.*, in fact, supports Defendant Anthem's position.

In sum, the Court finds that all three of Plaintiff's state law causes of action – with respect to the 11 Disputed ERISA Claims – are preempted under ERISA Section 514(a).  *Hillsboro*, 800 F.3d at 1155.

### ii.    Plaintiff Lacks Standing Due to Anti-Assignment Provision

"[A]nti-assignment clauses in ERISA health plans are valid and enforceable." *Beverly Oaks Phys. Surg. Ctr., LLC v. Blue Cross & Blue Shield of Ill.*, 983 F.3d 435, 441 (9th Cir. 2020) (citing *Spinedex Physical Therapy USA Inc.*, 770 F.3d at 1296).

Defendant contends that Plaintiff "lacks standing to pursue these 11 [Disputed ERISA Claims], as they are governed by health benefits plans containing valid and enforceable anti-assignment provisions."[21]  (MTD at 10; *see* Hicks Decl. ISO MTD ¶¶ 8-15 & Ex. A-G) (demonstrating that all seven of the ERISA plans implicated by the 11 Disputed ERISA Claims contain anti-assignment clauses).  Plaintiff does not contest the existence or validity of these clauses, such that the Court considers this point conceded.  *See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F.Supp.2d 1125, 1132 (C.D. Cal. 2011) (citations and quotations omitted) ("[I]n most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue"); *see also Kroeger v. Vertex Aerospace LLC*, 2020 WL 3546086, at *8 (C.D. Cal. June 30, 2020) (collecting cases holding that party conceded argument by failing to address it in opposition brief).

---

[21] Plaintiff seems to misunderstand that Defendant Anthem's argument regarding standing applies *only* to the 11 Disputed ERISA Claims.  (Opp'n to MTD at 14). Nowhere does Defendant Anthem move to dismiss the suit in its entirety due to lack of standing.  (*See* MTD at 10) (concluding its argument by stating that Plaintiff "has no standing to sue *with respect to these 11 claims*") (emphasis added).

1    Plaintiff argues, however, that the allegations in the FAC indicate that these

2    anti-assignment provisions "likely have been [waived] with respect to the eleven

3    claims, based on a course of conduct that goes beyond direct reimbursement to a

4    patient for medical services."  (Opp'n to MTD at 12).  The Court is not convinced.

5        The Court agrees with Defendant Anthem that the FAC "fails to allege any

6    conduct whatsoever by [Defendant] Anthem that is tantamount to a waiver."  (Reply

7    at 5).  "Waiver is the intentional relinquishment of a known right with knowledge of

8    its existence and the intent to relinquish it."  *Catch a Wave, Inc. v. Sirius XM Radio,*

9    *Inc.*, 2013 WL 1996134, at *2 (N.D. Cal. May 13, 2013).  There are no facts within

10   the FAC suggesting that Defendant Anthem intended to waive these provisions – nor

11   that it was even aware Plaintiff was an assignee.  *See also Spinedex Physical Therapy*

12   *USA Inc.*, 770 F.3d at 1297 (9th Cir. 2014) ("there was no evidence that [the

13   defendants] were aware, or should have been aware, during the administrative process

14   that [the plaintiff] was acting as its patients' assignee . . . [The] [d]efendants therefore

15   did not waive their objection to the assignment in the district court when it became

16   clear, for the first time, that [the plaintiff] was claiming as an assignee").  In sum, even

17   if waivable, there are no facts alleged in the complaint that suggest the anti-

18   assignment provisions were waived.[22]

19       Accordingly, the Court **GRANTS** Defendant Anthem's Motion to Dismiss with

20   respect to the 11 Disputed ERISA Claims.  Given that amendment would be futile in

21   this context, the 11 Disputed ERISA Claims are dismissed with prejudice.  *Foman*,

22   371 U.S. at 182.

23

24

25

---

26   [22] Plaintiff also argues that the claims might have been "emergent" such that
     assignments may have been permitted in some cases.  (Opp'n to MTD at 13).  As
27   Defendant Anthem notes, however, the full plan language was submitted in support of
     this Motion and contains "no exceptions that would allow assignments in the case of
28   emergencies[.]"  (Reply at 6).  Accordingly, this argument, too, fails.

b. Claims Arising Under the Medicare Act Are Subject to Dismissal for Failure to Exhaust Administrative Remedies

Federal judicial review under 42 U.S.C. § 405(g) is "'the sole avenue for judicial review' for claims 'arising under' the Medicare Act[,]" which may only be pursued following exhaustion of the administrative remedies. *Do Sung Uhm v. Humana, Inc.* ("*Uhm*"), 620 F.3d 1134, 1140 (9th Cir. 2010) (quoting *Heckler v. Ringer*, 466 U.S. 602, 614-15 (1984)). A court "cannot exercise subject matter jurisdiction" until such claims subject to this requirement are properly exhausted. *Id.* at 1141; *see also Glob. Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.* ("*Global Rescue*"), 30 F.4th 905, 911 (9th Cir. 2022) (emphasizing that the exhaustion requirement applies to MA Program benefits under Part C, just as it does to benefits under original Medicare).

Claims "arise under" the Medicare Act where either: (1) the Medicare Act is "both the standing and the substantive basis for the presentation" of the claims; *or* (2) the claims are "inextricably intertwined" with a claim for benefits. *Heckler*, 466 U.S. at 614-15. Claims that are "'[c]leverly concealed claims for benefits'" are still properly considered claims arising under the Medicare Act. *Uhm*, 620 F.3d at 1141 (quoting *Kaiser v. Blue Cross of Cal.* ("*Kaiser*"), 347 F.3d 1107, 1112 (9th Cir. 2003)).

Citing to *Global Rescue*, Defendant Anthem argues that 16 Disputed Medicare Claims are "governed by the Medicare Act[,]" as Plaintiff's claims are merely "an attempt to recover additional reimbursements" that "challeng[e] [Defendant] Anthem's determinations[.]" (Mot. at 14). Defendant Anthem contends that, as Plaintiff has not alleged "facts demonstrating that it exhausted its administrative remedies," the 16 Disputed Medicare Claims must be dismissed. (*Id.*). The Court agrees, finding *Global Rescue* on all fours.

In *Global Rescue*, the plaintiff was an out-of-network medical provider that alleged, among other causes of action, (1) breach of contract as the assignee of the

enrollees' right to receive benefits; (2) breach of the implied covenant of good faith and fair dealing; and (3) quantum meruit. 30 F.4th at 910. The plaintiff contended that the MAO defendant had paid only a "fraction" of the amounts billed and sued to recover the full amounts. *Id.* Finding that the state law claims, in actuality, arose under the Medicare Act, the district court dismissed the action for lack of subject matter jurisdiction, as the plaintiff failed to exhaust its administrative remedies.[23] *Id.* On appeal, the plaintiff argued both that it was not required to exhaust administrative remedies, and that any exhaustion requirement should have been excused. *Id.* The Ninth Circuit disagreed, upholding the dismissal. *Id.* The court emphasized that "the district court lacked subject matter jurisdiction over [the plaintiff's] claims to recover benefits allegedly owed under [the defendant's] plan[,]" where the plaintiff had failed to exhaust its administrative remedies under Part C.[24] *Id.* at 915.

Plaintiff's only argument on this topic is that a dispute over exhaustion is "inappropriate . . . at this pleading stage of the action." (Opp'n to MTD at 14). Plaintiff contends that "[w]hether Plaintiff exhausted its administrative remedies is a factual issue that will be addressed in discovery[.]" (*Id.*). The Court disagrees. "The issue of exhaustion bears on the district court's jurisdiction[.]" *Uhm*, 620 F.3d at 1140. Accordingly, it must be addressed "first." *Id.*; *see also Global Rescue*, 30 F.4th at 914 (emphasizing that administrative exhaustion requirement applies to Part C of the Medicare Act and is a jurisdictional requirement).

---

[23] There, the plaintiff had exhausted two of the five levels of administrative review as to one enrollee and one level of review for the second enrollee. *Id.* at 915.

[24] The Court briefly notes that the administrative exhaustion requirement includes two jurisdictional prerequisites: (1) a "'nonwaivable requirement that a claim for benefits shall have been presented to the Secretary[;]'" and (2) a "'waivable requirement that the administrative remedies prescribed by the Secretary be pursued fully by the claimant." *Id.* at 912-13 (quoting *Heckler*, 466 U.S. at 617). The waivable requirement may only be excused if "three conditions are satisfied: (1) the plaintiff's claim is wholly collateral to a claim for Medicare benefits; (2) the plaintiff has made a colorable showing of irreparable harm; and (3) exhaustion would be futile." *Id.* at 919. Plaintiff has not alleged facts on either the nonwaivable *or* the waivable requirement, nor has it alleged facts demonstrating that exhaustion is waivable here.

1    The Court, therefore, agrees with Defendants that the 16 Disputed Medicare

2    Claims – which are governed by the Medicare Act – must be dismissed due to lack of

3    jurisdiction, where there are no facts alleged regarding administrative exhaustion.  To

4    the extent that Plaintiff *has* exhausted administrative remedies, these claims are

5    dismissed without prejudice and with leave to amend.

6    c.  <u>Plaintiff Fails to State a Claim</u>

7    Defendant Anthem also contends that Plaintiff fails to state a claim with respect

8    to each of its state-law causes of action.  The Court agrees, as explained below,

9    addressing each cause of action in turn.  While the first and second causes of action

10    are dismissed without prejudice, the third cause of action is dismissed with prejudice.

11    **i.    Breach of Contract**

12    To support a claim for a breach of contract, "a plaintiff must allege (1) the

13    existence of a contract; (2) that he has performed or that his nonperformance is

14    excused; (3) defendant's breach of the contract; and (4) damages resulting from the

15    breach."  *Greenwich Ins. Co. v. Rodgers*, 729 F.Supp.2d 1158, 1163 (C.D. Cal. 2010)

16    (citing *Troyk v. Farmers Grp., Inc.*, 171 Cal.App.4th 1305, 1352 (2009)).  "With

17    respect to this first requirement – the need to plead the contract – a plaintiff must, in

18    actions involving breach of a written contract, 'allege the specific provisions in the

19    contract creating the obligation the defendant is said to have breached.'"  *In re*

20    *Anthem, Inc. Data Breach Litigation*, 162 F.Supp.3d 953, 978 (N.D. Cal. 2016)

21    (quoting *Young v. Facebook, Inc.*, 790 F.Supp.2d 1110, 1117 (N.D. Cal. 2011)).

22    Defendant Anthem argues that Plaintiff's "contract claim fails to allege any

23    terms of any health plans at all, let alone facts suggesting its services were covered

24    under the plan or that [Defendant] Anthem's payment breached the plan terms."

25    (MTD at 15.)  Instead, Plaintiff alleges that "unknown providers obtained

26    'requisitions' from members that assigned rights and benefits to [Plaintiff] and that

27    [Defendant] Anthem therefore 'deprived' [Plaintiff] of payment, presumably by not

28    paying all of its claims in full."  (*Id.*) (quoting FAC ¶¶ 15, 4).  Plaintiff, citing to

1   *Innova* contends that it "should not be held to an excessively burdensome pleading

2   standard that requires it to identify particular plan provisions and plan language when

3   it may be difficult to do so due to lack of access to such plan documents." (Opp'n to

4   MTD at 16); *see Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield

5   of Ga., Inc.* ("*Innova*"), 892 F.3d 719, 724 (5th Cir. 2018). The Court agrees with

6   Defendant Anthem and finds *Innova* distinguishable.

7           As a practical matter, Defendant is correct that "[s]imply alleging

8   dissatisfaction with payment amounts does not constitute a breach of contract claim,

9   as it presupposes entitlement to full billed charges for all services." (Reply at 7).

10  Therefore, even assuming the assignments are valid – which Defendant Anthem

11  contests[25] – there are simply "[n]o facts [] presented to support that [Plaintiff] is

12  entitled to any specific payment under the [Insureds'] health plans[.]" (*Id.*). The

13  Court agrees. The blanket allegation that Defendant Anthem underpaid for services

14  billed is conclusory absent facts demonstrating its obligation to pay for those services

15  in full or pay for them at all. This is particularly so where plan language may vary

16  among the remaining 1,299[26] Disputed Claims.

17          Furthermore, Defendant is correct that *Innova* is "distinguishable." (Reply at

18  7). There, the Fifth Circuit reviewed a district court's dismissal of the plaintiff's

19  claims for breach of contract and ERISA plan benefits. *Innova*, 892 F.3d at 727. The

20  plaintiff was an out-of-network hospital that had rendered services to insureds of the

21  defendants. *Id.* Though the district court had concluded that the plaintiff failed to

22  state a claim due to the failure to identify specific plan provisions, the Fifth Circuit

23  reversed. *Id.* at 727-729. *Innova* is distinguishable for two main reasons. First, as

24

25  [25] Plaintiff provides the language of the assignment provision that the Insureds'
    allegedly signed. (FAC ¶ 16). The Court presumes these assignments are valid for
26  the purposes of the MTD, though Defendant Anthem argues that "the notion that
    patients would knowingly transfer their health plan rights to an unknown laboratory
27  provider during a routine physician visit is implausible." (Reply at 7).
    [26] The Court, here, has subtracted the 11 Disputed ERISA claims and the 16 Disputed
28  Medicare Claims.

Defendant Anthem highlighted (Reply at 7), the plaintiff there had made documented
efforts to obtain the plan language at issue for years. *Id.* at 727-29. The court
emphasized this point in reaching its decision, noting that the plaintiff "repeatedly
sought to obtain from the [defendants] the plan documents at issue" to no avail. *Id.* at
729. It was, therefore, unrealistic to require the plaintiff to provide specific plan
language for all claims. *Id.* No similar facts are alleged here. Second, the plaintiff
there had alleged "improper reimbursement based on representative plan
provisions[,]" such that the district court could have drawn the reasonable inference
that the defendant had engaged in misconduct. *Id.* No similar facts are alleged here,
as Plaintiff provided no representative plan provisions. Finally, the plaintiff there had
also provided "more than mere conclusions[,]" including specific allegations about the
similarity of plan language across claimants and the average rates at which the
defendants reimbursed the plaintiff to support its allegations of misconduct. *Id.* The
Fifth Circuit concluded, therefore, that the plaintiff had alleged sufficient facts to state
a claim for breach of contract. *Id.* at 731. As noted, Plaintiff has presented the court
only with conclusions that it need not accept as true. *Twombly*, 550 U.S. at 555.

For the reasons explained herein, the Court **GRANTS** the MTD with respect to
the breach of contract claim. In the event that Plaintiff can supplement its allegations
to address the deficiencies noted by the Court, this dismissal is without prejudice and
with leave to amend.

### ii. Breach of Implied Covenant of Good Faith and Fair Dealing

"Every contract includes an implied covenant of good faith and fair dealing."
*AK Futures LLC v. LCF Labs Inc.*, No. 8:21-cv-02121-JVS, 2022 WL 2784409, at *5
(C.D. Cal. Jun. 24, 2022) (citing *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 683-
84 (1988). "[A] claim for breach of the implied covenant is superfluous if it merely
restates the claim for breach of contract." *Id.* (citing *Zepeda v. PayPal, Inc.*, 777
F.Supp.2d 1215, 1221 (N.D. Cal. 2011). "If the allegations do not go beyond the

1   statement of a mere contract breach and, relying on the same alleged acts, simply seek
2   the same damages or other relief already claimed in the companion contract cause of
3   action, they may be disregarded as superfluous as no additional claim is actually
4   stated." *Id.* (citing *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal.App.3d 1371,
5   1395 (1990).

6       Defendant argues that Plaintiff's "implied covenant claim depends on the same
7   factual allegations as its breach of contract claim," which is "[Defendant] Anthem's
8   alleged failure to pay [Plaintiff's] charges pursuant to the [Insureds'] health benefits
9   plans." (MTD at 16). Plaintiff contends that its claim goes beyond a breach of
10  contract claim because it alleges that "Defendant selectively paid claims and engaged
11  in a yearslong campaign designed to deprive Plaintiff of millions of dollars it is rightly
12  owed for services rendered[.]" (Opp'n to MTD at 18-19). The Court agrees with
13  Defendant.

14      Turning to the FAC, the only allegations with respect to this cause of action
15  point to Defendants "failure and/or refusal to respond to properly submitted claims or,
16  for those claims with Defendants did choose to respond, regularly refusing to pay
17  and/or underpaying claims submitted by Plaintiff for reasons that were (and remain)
18  entirely groundless . . ." (FAC ¶ 32). Plaintiff has not demonstrated how this is
19  meaningfully different than its breach of contract claim, as it relies on the same
20  alleged acts and conduct. *AK Futures LLC*, 2022 WL 2784409, at *5. Thus, the
21  Court agrees that this claim fails to go beyond the statement of a mere contract breach.
22  *Id.* The claim, therefore, is "superfluous" and must be dismissed. *Id.*

23      For the reasons explained herein, the Court, therefore, **GRANTS** Defendant
24  Anthem's MTD with respect to the second cause of action for breach of implied
25  covenant of good faith and fair dealing. In the event that Plaintiff can supplement its
26  allegations to address the deficiencies noted by the Court – thereby meaningfully
27  distinguishing this claim from the breach of contract claim – this dismissal is without
28  prejudice and with leave to amend.

### iii.   Quantum Meruit / Unjust Enrichment

"Quantum meruit is an equitable theory which supplies, by implication and in furtherance of equity, implicitly missing contractual terms." *Hedging Concepts, Inc. v. First All. Mortg. Co.*, 41 Cal.App.4th 1410, 1419 (1996).  "The whole point of quantum meruit recovery is to compensate plaintiffs who have provided a benefit to defendants but who do not have a contract – express or implied – with those defendants." *In re De Laurentiis Ent. Grp. Inc.*, 963 F.2d 1269, 1273 (9th Cir. 1992). Under California law, unjust enrichment is not considered an independent cause of action and is instead "just a restitution claim." *Hill v. Roll Internat. Corp.*, 195 Cal.App.4th 1295, 1307 (2011); *see also Sepanossian v. Nat'l Ready Mix Concrete Co.*, 97 Cal.App.5th 192, 207 (2023) (emphasizing that "an unjust enrichment claim is grounded in equitable principles of restitution").

"[W]here an equitable relief claim relies upon the same factual predicates as a plaintiff's legal causes of action, it is not a true alternative theory of relief but rather is duplicative of those legal causes of action." *Summit Estate, Inc. v. Cigna Healthcare of Cal., Inc.*, Case No. 17-cv-03871-LHK, 2017 WL 4517111, at *12 (N.D. Cal. Oct. 10, 2017).  Therefore, "at the pleading stage, a complaint 'must set forth facts to show that the breach cannot be adequately compensated for in damages; failing this, it does not state a cause of action.'" *Id.* (quoting 5 Witkin, *California Procedure* § 803 (5th ed. 2008).  Defendant Anthem argues that Plaintiff "plainly seeks money damages in the form of payment of health care benefits[,]" and therefore "has an adequate remedy at law[.]"  (MTD at 17).  The Court agrees.  Where Plaintiff has an adequate remedy at law, these causes of action fail.  *See Sky Sleep Lab v. Cigna Health and Life Ins. Co.*, No. 2:24-cv-00770-SVW-PD, 2025 WL 736496, at * (C.D. Cal. Jan. 23, 2025) (dismissing quantum meruit and unjust enrichment claims because the court could not conclude the plaintiff "lack[ed] an adequate remedy at law for its alleged injury[,]" where the plaintiff, who also sought money damages against the defendant insurance

company, did not allege that restitutionary relief would be more prompt, efficient and certain).

More importantly, Defendant Anthem argues that, as a matter of law, it "did not receive any benefit at Plaintiff's expense." (MTD at 17). Defendant cites to *Glasscell PC v. Aetna Life Ins. Co.* to support its proposition, which the Court agrees is "directly on point." (*Id.*); No. 8:23-cv-01464-FWS-JDE, 2025 WL 740181 (C.D. Cal. Feb. 7, 2025). There, the plaintiff was an out-of-network provider who asserted claims for unjust enrichment and quantum meruit against the defendant claims administrator. *Id.* at *1. The court dismissed both causes of action, emphasizing that "it was the patients, not [the defendant] that requested the medical services." *Id.* at *9-10. Furthermore, "services provided by medical providers to patients do not inure to the benefit of its insurers." *Id.* at *14. Because Plaintiff "cannot adequately plead that [Defendant] Anthem received a benefit as the result of health care services rendered to its members as a matter of law," the Court agrees that this cause of action fails. (MTD at 18); *see also Brickfire LLC v. Aetna Life Ins. Co.*, No. 8:23-cv-01463-FWS-JDE, 2024 WL 1121007, at *3 (C.D. Cal. Feb. 16, 2024) (dismissing quantum meruit claim where defendant insurance company did not request the services such that it cannot be said to have received a benefit); *Mapsong PC v. Aetna Life Ins. Co.*, No. 8:23-cv-01465-FWS-DFM, 2024 WL 1651945, at * (C.D. Cal. Feb. 16, 2024) (dismissing both unjust enrichment and quantum meruit claims where the defendant insurance company did not receive a benefit by virtue of the plaintiff's treating the defendants' insureds).

Accordingly, for the reasons explained herein, the Court **GRANTS** Defendant Anthem's MTD with respect to the third cause of action. As amendment would be futile in this context, this dismissal is with prejudice. *Foman*, 371 U.S. at 182.

### III.  CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's MTR, finding that removal was both timely and proper.  The Court **GRANTS / DENIES** Defendant Anthem's MTD as follows:

- The 11 Disputed ERISA Claims are dismissed with prejudice;
- The 16 Disputed Medicare Claims are dismissed without prejudice, but only in the event that Plaintiff can plead administrative exhaustion;
- The first and second causes of action for breach of contract and breach of implied covenant of good faith and fair dealing are dismissed without prejudice;
- The third cause of action for quantum meruit / unjust enrichment is dismissed with prejudice.

Should Plaintiff wish to file a Second Amended Complaint, it must do so within twenty-one (21) days of this Order.

**IT IS SO ORDERED.**

Dated: June 12, 2025                    _____

HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE